JENNIE H. KNORST

*v.*

JOHN KNORST.

*Opinion filed October 16, 1899.*

EVIDENCE—*when the fact of marriage is not proved in suit for divorce.*
In a suit for divorce the fact of marriage is not shown where there
is no proof that a license was issued, the officiating minister is not
produced as a witness nor any attempt made to account for his
absence, and when the letters, business transactions, frequent dec-
larations and various writings signed by complainant subsequent
to the date of the alleged marriage are inconsistent with it.

*Knorst* v. *Knorst*, 80 Ill. App. 344, affirmed.

APPEAL from the Appellate Court for the First Dis-
trict;—heard in that court on writ of error to the Su-
perior Court of Cook county; the Hon. JOHN BARTON
PAYNE, Judge, presiding.

EDWARD U. FLIEHMANN, and MAX J. RIESE, for ap-
pellant.

D. M. KIRTON, and CLAUDIUS PETERS, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the
court:

The plaintiff in error filed a bill against the defend-
ant in error charging him with extreme and repeated
cruelty, and on hearing a decree for divorce and for ali-
mony and for solicitor's fees was entered in her favor.
He prosecuted a writ of error to the Appellate Court for
the First District, and there a judgment was entered re-
versing the decree of the superior court, and she sues
out this writ of error.

Both the parties were married, and each was divorced
before this alleged marriage, and each had children. The
plaintiff in error was divorced from her former husband
in July, 1892, and she claims that a marriage was solem-

nized between her and the defendant in error September 22, 1894. She claims to have been married by one Rev. Hayes, who, she says, lived on West Adams street, west of Ashland, in Chicago. This marriage is denied by the defendant in error, who shows that intimate relations existed between him and the plaintiff in error for several years before, as well as after, September 22, 1894, and he asserts that he sustained illicit relations with her during this period. She denies all illicit relations with him prior to September 22, 1894, when she claims to have been married. She testifies that she received a certificate of marriage from Rev. Hayes, which she claims she showed to other persons, and which she claims was torn up and put in the stove by defendant in error on an occasion when a quarrel was had between them. Mrs. Samuels testified that she saw on one occasion, and read part of, what purported to be a marriage certificate between these parties, and that she read in it the name Hayes. Hayes is not produced as a witness nor is his absence accounted for. The plaintiff in error says that the defendant told her when he tore up the certificate that the minister was not an ordained minister. This he denies, and also denies that there was ever any ceremony of marriage performed or that a certificate of marriage between them ever existed. She offered in evidence two envelopes addressed in the handwriting of Knorst, postmarked in Chicago in November and December, 1894, and directed to "Mrs. J. Knorst, Philadelphia, Pa." She was in Philadelphia at that time, and testified that the letters which were contained in these envelopes were destroyed by Knorst at a time when they were quarreling. Several witnesses testify that Knorst, on different occasions after September 22, 1894, introduced the plaintiff in error as Mrs. Knorst, said she was his wife, and so called her. They also testified to acts and relations between the parties tending to show that they were living together as husband and wife. A still greater number of witnesses,

apparently equally credible, testified that during the same period the defendant in error spoke to the plaintiff in error in their presence and addressed her as Mrs. Flynn,—that being her name prior to the time of this alleged marriage,—and those witnesses further testify to acts and statements on the part of both of these parties tending to show they were not living together as husband and wife. There were introduced a number of letters written by the plaintiff in error in November and December, 1894, and in January, 1895, which contained numerous expressions wholly inconsistent with her allegation that she was his wife. She does not address him or use any word in any of these letters tending to show that he was her husband. She asks him when he comes to Philadelphia to stop and see an old friend, (referring to herself,) and further states in one of her letters: "You told me yourself that you would not·be true to me, as you was nothing at all to me." In still another she writes: "I am alone in this cold and cruel world, without husband, child or friend, all for your sake, and I have received my reward in the short space of three years." In still another letter she says: "Wish you would not change my name. One time you address Knorst, then Flynn. The last letter you sent you addressed Flynn. It don't make much difference, for they call me Mitchell, Knorst and Flynn, only it looks bad to strangers."

Numerous papers were offered in evidence, among others a chattel mortgage made by the plaintiff in error; a check made by the defendant in error, payable to and endorsed by her; a promissory note made by Knorst, payable to her and endorsed by her as paid; a bill of sale from the Gormully & Jeffery Manufacturing Company to her; an agreement between her and the Gormully & Jeffery Manufacturing Company, as also other papers executed by her at different dates in 1895 and in 1896, and all were in the ·name of Flynn, and all made after the time she claims to have been married to him and claims

to have been known as his wife. It appears she brought suit in the name of Flynn in 1895, against one Weber.

Plaintiff in error claims that a license was handed to the minister by Knorst, but it does not appear that any attempt was made to show that a license was issued. Her conduct in reference to making no effort to show the issuing of a marriage license, and in failing to show that she made any effort to account for the absence of the minister who performed the ceremony, together with her frequent business transactions in the name of Flynn long after she alleges the marriage to have taken place, is absolutely inconsistent with her claim that she was ever married to Knorst. Her letters, her business transactions, her frequent declarations, and the various writings signed by her, are all in conflict with the claim she makes of having been married to him.

On a careful examination of all the evidence we are satisfied that the conclusion reached by the Appellate Court was correct, and its judgment reversing the decree of the chancellor on the hearing is affirmed.

*Judgment affirmed.*